**WO**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angelina Mamedova, | No. CV-25-04619-PHX-DWL (JZB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Kristi Noem, et al., | |
| Respondents. | |

**TO THE HONORABLE DOMINIC W. LANZA, UNITED STATES DISTRICT JUDGE**:

Pending before the Court is Petitioner's Amended "Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 and Emergency Request for Immediate Release" ("Petition for Writ of Habeas Corpus").[1] (Doc. 4.) The question presented in this matter— what procedural due process is owed to a noncitizen who has been detained for a prolonged period pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii)—is novel in this District.

**I.     SUMMARY OF CONCLUSIONS.**

Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii) by the Department of Homeland Security ("DHS") Immigration and Customs Enforcement ("ICE") and has been detained since October 19, 2024. (*Id.* at 1.) Petitioner was ordered removed by an Immigration Judge and that order was affirmed by the Board of Immigration Appeals ("BIA").  On October 29, 2025, the Ninth Circuit Court of Appeals issued a stay

---

[1]     This action was referred to this Court "for further proceedings and a report and recommendation". (Doc. 11 at 3.)

of removal while it reviews Petitioner's petition for review.  (Doc. 22-1 at 3); (doc. 4 at 7.)

Considering Petitioner's current 17-month detention, the stay issued by the Ninth Circuit, and the liberty interest at stake, the Court concludes that Petitioner's continued detention offends due process as applied in the specific circumstances of this action. Therefore, the Court recommends the Petition be granted in part and denied in part. Specifically, the Court recommends that Petitioner be granted an individualized bond hearing. Furthermore, the Court recommends that, at the bond hearing, the government bear the burden of proving Petitioner is a danger or flight risk by clear and convincing evidence.

These findings are congruent with recent caselaw from our sister districts. Additionally, these findings do not run afoul of Supreme Court precedent considering the Court's entry fiction doctrine applies to admissions, not as-applied constitutional challenges based on length of detention. Furthermore, these findings appear in-line with the Presiding Judge's prior findings in *Ibarra-Perez v. Howard*, where the Court opposed "indefinite detention," especially where a "[p]etitioner's removal ceases to become reasonably foreseeable[.]" *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1177–78 (D. Ariz. 2020) (citing *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078 (9th Cir. 2006).[2]

**II.    BACKGROUND.**

Petitioner is a 28-year-old native of Togliatti, Samara Oblast, Russian Federation. *See* (doc. 22-1 at 1.) Petitioner is a citizen of the Russian Federation. (*Id.*)

Before arriving in the United States, Petitioner lived in several countries, including Australia and Indonesia, due to her work. (Doc. 4 at 5.) While residing outside of the Russian Federation, Petitioner avers that in 2022 she "donated a small amount of money to a humanitarian organization assisting civilians in Ukraine. . . . [and] expressed her political

---

[2]    "In short, applying the Supreme Court's statutory analysis to the instant case, we conclude that the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period. Rather, consistent with the Supreme Court's approach in *Zadvydas*, we conclude that the statutes at issue permit detention only while removal remains reasonably foreseeable." *Nadarajah*, 443 F.3d at 1078.

views opposing the Russian government's actions in Ukraine." (*Id.*)

Upon returning to the Russian Federation in 2023, Petitioner alleges that government authorities began searching for her. (*Id.*) This search included warrantless searches of her home and questioning her tenants about her whereabouts. *See* (*id.*) Petitioner's tenants were notified by government authorities that Petitioner was suspected of committing treason. (*Id.*)

During this time, Russian authorities "sought out Petitioner's Mother." (*Id.* at 6.) Authorities allegedly visited her mother repeatedly and threatened to seize her assets and property if she did not disclose Petitioner's location. (*Id.*) Petitioner states that "[d]uring these visits, officers stated that Petitioner's donation and political statements constituted a violation of Article 275 of the Russian Criminal Code, which carries a maximum sentence of up to twenty years' imprisonment." (*Id.*)

Fearing her imminent arrest, Petitioner fled the Russian Federation in December of 2023. (*Id.*) She arrived at the DeConcini Port of Entry in Nogales, AZ, on October 19, 2024. (Doc. 22-1 at 2.) On the same day, she applied for admission. (*Id.*) Thereafter, U.S. Customs and Boarder Protection ("CBP") arrested Petitioner and issued her a Notice and Order of Expedited Removal, Form I-860, charging her with violating 8 U.S.C. §1182(a)(7)(A)(i)(I).[3] (*Id.*) At this time, Petitioner expressed a fear of returning to the Russian Federation, resulting in CBP officers conducting an Information About Credible Fear Interview, Form M-444. (*Id.*) Petitioner was initially transferred to ICE custody at the Florence Detention Center on October 19, 2024, before being transferred to the Eloy Detention Center on October 20, 2024. (*Id.*) Petitioner has remained in ICE detention at the Eloy Detention Center since October 20, 2024. (Doc. 4 at 6.)

On October 22, 2024, Petitioner's immigration case was referred to an Asylum Pre-Screening Officer (APSO") for a credible fear interview. (Doc. 22-1 at 2.) On November

---

[3]   This provision states that an immigrant "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible." 8 U.S.C. §1182(a)(7)(A)(i)(I).

5, 2024, an APSO issued Petitioner a discretionary Notice to Appear, Form I-862, which was filed with the Executive Office for Immigration Review on the same day. (*Id.*)

On November 7, 2024, Petitioner passed her credible fear interview and provided DHS with documentary support of the threats against her in the Russian Federation. (Doc. 4 at 6); (doc. 22-1 at 2.) Her asylum claim—and her claims for withholding removal and protection under the Convention Against Torture—were denied by an IJ on March 3, 2025. (Doc. 4 at 6); (doc. 22-1 at 2.)

Petitioner appealed the IJ's decision to the BIA on April 16, 2025, which dismissed her appeal on July 24, 2025. (Doc. 4 at 7); (doc. 22-1 at 3.) Petitioner then "filed a timely petition for review with the United States Court of Appeals for the Ninth Circuit" on August 15, 2025. (Doc. 4 at 7); (doc. 22-1 at 3.) While her appeal to the Ninth Circuit was pending, "Petitioner learned that Russian authorities had . . . issued a formal arrest warrant for her." (Doc. 4 at 7.)

On October 29, 2025, the Ninth Circuit granted Petitioner's motion for a stay of removal while her appeal remains pending. (*Id.*); *Mamedova v. Bondi*, No. 25-5173, 2025 U.S. App. LEXIS 28378, at *1 (9th Cir. Oct. 29, 2025). While the stay remains in effect, DHS cannot remove Petitioner until the Court of Appeals issues its final order. (Doc. 4 at 7.) Petitioner avers that "[c]urrent processing times indicate that it may take up to three years for the petition to be fully briefed, considered, and resolved." (*Id.*) Her petition for review has been fully briefed since February 13, 2026. (Doc. 22 at 2.)

On December 11, 2025, Petitioner filed her original Petition. (Doc. 1.) On December 17, 2025, the petition was dismissed with leave to amend. *See* (doc. 3 at 3.) On December 19, 2025, Petitioner filed her Amended Petition for Writ of Habeas Corpus. *See* (doc. 4.) On February 9, 2026, the District Court screened her Amended Writ and permitted it to proceed in part. *See* (doc. 11.) Specifically, Petitioner's Due Process claim was permitted to proceed, while her 8 U.S.C. § 1231(a) was dismissed. (*Id.* at 2–3.) Respondents filed a Response on March 12, 2026. (Doc. 21.) Petitioner has not filed a Reply, and the time for doing so has expired.

### III.    PARTIES' ARGUMENTS.

At its most basic sense, the parties dispute whether Petitioner's prolonged civil detention pending judicial review of her appeal is constitutional. However, the simplicity of the prior sentence belies the considerable issues present in the instant action.

#### A. Petitioner.

Petitioner requests to be released from DHS custody during the pendency of her judicial review. (Doc. 4 at 2.) In support of this request, Petitioner relies upon the Due Process Clause of the Fifth Amendment to argue that her detention has become prolonged with no reasonable relation to its initial permissible purpose. (*Id.* at 14.) Petitioner further contends that she has been in DHS custody for over 17 months, a civil detention period that may be extended by three years if she is to remain in DHS custody during the review of her appeal. (*Id.*) Finally, Petitioner alleges that "[c]ontinued detention under these circumstances is not reasonably related to the statutory purpose of securing removal and has become excessive, arbitrary, and punitive in violation of the Due Process Clause." (*Id.*) (citing *Foucha v. Louisiana*, 504 U.S. 71, 82–83 (1992)).

#### B. Respondents.

Respondents oppose Petitioner's position, asserting that her "detention is statutorily authorized and constitutional." (Doc. 22 at 2.) Respondents assert three main arguments against granting the instant Petition: (a) Petitioner cannot "allege that [her] detention has become unconstitutionally prolonged when the prolongation is caused by [her] own appeal"; (b) she has not technically "entered" the United States, so it is fiction to state that she has entered the country and is granted any procedural rights beyond those provided by Congress; and (c) that even were the Court to find that she has a liberty interest, she is still not entitled to release. (*Id.* at 2–9.)

### IV.    28 U.S.C. § 2241 WRIT OF HABEAS CORPUS.

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ"

makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'") (quoting *Ex parte Bollman*, 8 U.S. (4 Cranch) 75, 95 (1807)); *cf. In re Kaine*, 55 U.S. (14 How.) 103 (1852) (applying the writ of habeas corpus in the immigration context). The Supreme Court has made clear that § 2241 applies to noncitizens[4] challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Because Petitioner does not challenge the merits of her removal order—only her prolonged civil detention—the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order[.]").

## V.    DISCUSSION.

### A. Statutory Basis for Petitioner's Detention.

There are three statutes that generally govern immigration detention of a noncitizen: 8 U.S.C. §§ 1225, 1226, and 1231. "A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up). The statute implicated in this action is 8 U.S.C. § 1225.

---

[4]    Undersigned shall use the term 'noncitizen' unless a quoted statute or court decision uses the term 'alien.' This usage is congruent with the Ninth Circuit Court of Appeals' precedent, such as *Avilez v. Garland*, which specifically stated:

> This opinion uses the term noncitizen unless quoting language from the immigration statutes or past opinions containing the term alien. There are two reasons behind this choice. First, use of the term noncitizen has become a common practice of the Supreme Court[.] Second, even if that were not the case, careful writers avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing. The word alien can suggest "strange," "different," "repugnant," "hostile," and "opposed," . . . while the word noncitizen, which is synonymous, . . . avoids such connotations. Thus, noncitizen seems the better choice.

*Avilez v. Garland*, 69 F.4th 525, 527 n.1 (9th Cir. 2023) (cleaned up).

Generally, the decision over who may enter the United States and remain here after entry "begins at the Nation's borders and port of entry" and is governed by 8 U.S.C. § 1225. *See Jennings v. Rodriguez*, 583 U.S. 281, 286–87 (2018). A noncitizen "who 'arrives in the United States,' or 'is present' in this country 'but has not been admitted,' is treated as 'an applicant for admission.'" *Id.* at 287 (quoting 8 U.S.C. § 1225(a)(1)). Applicants for admission[5] are inspected by immigration officers to ensure that they may be admitted pursuant to federal immigration law. *See Jennings*, 583 U.S. at 287.

Applicants for admission fall under one of two categories, § 1225(b)(1) and § 1225(b)(2). *See* 8 U.S.C. § 1225(b)(1)–(2). In other words, "[a]pplicants for admission are processed either through expedited removal proceedings or through regular removal proceedings." *Innovation L. Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019).

Applicants falling under § 1225(b)(1), expedited removal, are those noncitizens who were "initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111 (W.D. Wash. 2019). Normally, these individuals are subject to an expedited removal process without a hearing before an IJ. 8 U.S.C. § 1225(b)(1). However, if "the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution," they may be provided a hearing before an IJ following a credible fear screening[6] by an asylum officer. *Id.* § 1225(b)(1)(A)(i)–(ii), (B)(i)–(iii). Pending a final determination of credible fear, the noncitizen is to remain detained. *Id.* § 1225(b)(1)(B)(iii)(IV). "If the officer determines at the time of the interview that a[ noncitizen] has a credible fear of persecution . . . the [noncitizen] shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

---

[5] Applicants for admission are also referred to within the statutory and regulatory framework as "arriving aliens." *See* 8 C.F.R. § 1001.1(q).

[6] At this screening, an asylum officer determines whether the noncitizen has a "credible fear of prosecution." 8 U.S.C. § 1225(b)(1)(B)(i)–(ii). A finding of credible fear of persecution by the asylum officer does not equate immediate eligibility for asylum. *Id.* § 1225(b)(1)(B)(v). Rather, "the term 'credible fear of prosecution' means that there is a significant possibility, taking into account the credibility of the statements made by the alien in support of the alien's claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum[.]" *Id.*

Under the statutory text, a noncitizen asylum seeker may be temporarily released on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). This parole does not mean that the noncitizen is admitted into the country. *Id.* "Instead, when the purpose of the parole has been served, 'the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *See Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

Section 1225(b)(2), regular removal, is broader than § 1225(b)(1). *See Jennings*, 583 U.S. at 287. "It serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* While both § 1225(b)(1) and § 1225(b)(2) are similar, noncitizens who are covered by § 1225(b)(2) are detained via a different process. *Id.* at 288. Noncitizens detained pursuant to § 1225(b)(2) "'shall be detained for a removal proceeding' if an immigration officer 'determines that they are not clearly and beyond a doubt entitled to be admitted' into the country." *Id.* (quoting 8 U.S.C. § 1225(b)(2)(A)) (cleaned up).

In the instant action, Petitioner is detained pursuant to § 1225(b)(1)(B)(ii)—a noncitizen with a credible fear of prosecution that "shall be detained for further consideration of the application for asylum. 8 § 1225(b)(1)(B)(ii). Considering the basis of her statutory detention, the Court shall address what due process requires in the instant action.

**B. Due Process**.

The Court turns to Petitioner's due process claim. The Court's due process analysis is separated into two steps: "[F]irst[, the Court] ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so[, the Court] ask[s] whether the procedures followed by the [government] were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).

//

- 8 -

### 1. *Liberty Interest*.

"A liberty interest may arise from the Constitution itself[7] . . . or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted). If a liberty interest is found, the Court then determines whether the administrative procedures are sufficient considering the "particular situation."[8] *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

The parties disagree on the extent of Petitioner's liberty interest. Petitioner contends that she has a liberty interest in immediate release from DHS custody pending the Ninth Circuit Court of Appeals' review of her petition for review. (Doc. 4 at 14.) Respondents aver that Petitioner does not have a protected liberty interest in freedom from detention because, based on the entry fiction doctrine, she only has a due process interest in the procedures set by statute. (Doc. 2 at 7.)

The entry fiction doctrine asserted by Respondents is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens have "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Shaughnessy v. U.S. ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'"

---

[7]   "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

[8]   The Court notes that due process is a flexible concept. This, however, "does not mean that judges are at large to apply it to any and all relationships. Its flexibility is in its scope once it has been determined that some process is due; it is a recognition that not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey*, 408 U.S. at 481.

*Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693). Put differently, "[w]hen an alien arrives at a port of entry—for example, an international airport—the alien is on U.S. soil, but the alien is not considered to have entered the country[.]" *Thuraissigiam*, 591 U.S. at 139. Therefore, while a citizen may be physically present within the country, they were "still in theory of law at the boundary line and had gained no foothold in the United States[.]" *Zadvydas*, 533 U.S. at 693 (quoting *Kaplan v. Tod*, 267 U.S. 228, 257–58 (1925)).

This distinction is predicated upon the following "fundamental proposition: 'The power to admit or exclude aliens is a sovereign prerogative.'" *Thuraissigiam*, 591 U.S. at 139 (cleaned up) (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)). "The Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit, . . . and a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139 (quoting *Nishimura Ekiu v. United States*, 142 U.S. 651, 659 (1892)).

Respondents, based upon the foregoing, extrapolate the following: (1) "that [Petitioner] is entitled to only those procedures granted [to] her by statute, nothing more"; and (2) that "Petitioner cannot be held to have a protected liberty interest in freedom from detention because [s]he is required to be detained by statute, and the only way [s]he can be released from detention is totally discretionary. The Due Process Clause does not protect everything that might be described as a benefit." (Doc. 22 at 7) (citation omitted). In other words, Respondents contend that Petitioner, who has not legally effected an entry but is still within the geographical bounds of the U.S., does not have a cognizable Fifth Amendment liberty interest at stake because: (1) she only has a due process interest in those rights regarding admission that Congress has provided by statute; and (2) Congress only provided for temporary parole at the complete discretion of the attorney general. (*Id.* at 7–8.) Respondents rely upon the Supreme Court's decision in *Shaughnessy v. U.S. ex rel. Mezei* to support their interpretation. (*Id.* at 7.)

The Court disagrees with Respondents approach. Based on a review of current

district court interpretation and a plain reading of Supreme Court precedent, it appears that, outside of the context of admissions, a noncitizen has a liberty interest to be free from civil confinement once their civil detention has become prolonged[9]—even if that 'freedom' is solely an individualized bond hearing.[10]

Undersigned is persuaded by the interpretation of numerous courts, both in this District and its sister districts, that have held the entry fiction applies to the procedural rights of noncitizens regarding *admission*, not *every* procedure occurring in the immigration context—*i.e.*, the entry fiction doctrine is inapplicable to challenges of a petitioner's length of detention. *See D.V.D. v. U.S. Dep't of Homeland Sec.*, No. CV 25-10676-BEM, 2026 WL 521557, at *28–31 (D. Mass. Feb. 25, 2026)[11]; *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1170–72 (W.D. Wash. 2023). These decisions, their progeny, and similar such decisions in numerous district courts interpreting the entry fiction doctrine, are based on a finding that arriving noncitizens, such as Petitioner, have "only those rights *regarding admission* that Congress has provided by statute."[12] *Thuraissigiam*, 591 U.S. at 140 (emphasis added).

//

---

[9]     Undersigned acknowledges there is an internal split amongst the learned jurists within the District of Arizona on the issue of due process for § 1225(b) petitioners. *Compare Guevara Serrano v. Bondi*, No. CV-26-00110-PHX-DJH, at *7 (CDB) (D. Ariz. Mar. 7, 2026) (granting immediate release) *with Escalona Plaza v. Rosa*, No. CV-26-00195-PHX-MTL (MTM) (D. Ariz. Mar. 16, 2026) (denying petition for writ of habeas corpus). Although there is a split in this District, the split is based upon § 1225(b)(2) petitioners, not § 1225(b)(1) petitioners like the instant Petitioner. *See Guevara Serrano*, No. CV-26-00110-PHX-DJH (CDB), at *2; *see also Escalona Plaza*, No. CV-26-00195-PHX-MTL (MTM), at *2.

[10]     *See infra* section V.B.2.b.

[11]     Respondents note that *D.V.D.* is an out-of-circuit decision that is currently stayed by the First Circuit. (Doc. 22 at 7.) While the Court acknowledges these facts, undersigned is nonetheless persuaded by the analysis contained within *D.V.D.* Furthermore, undersigned does not stand alone within the District of Arizona in relying upon *D.V.D. See Guevara Serrano*, No. CV-26-00110-PHX-DJH (CDB), at *3–4.

[12]     There is a current split between the learned magistrate judges within the District of Arizona on the entry fiction doctrine. *Compare Balayan v. Unknown Parties*, 2:26-cv-00072-SMB (DMF), at *5–6 (D. Ariz. Feb. 19, 2026) (pending R&R recommending dismissal based on entry fiction doctrine) *with Avakian v. Rokosky*, 2:26-cv-00104-SHD (CDB), at *18 n.7 (D. Ariz. Feb. 24, 2026), *report and recommendation adopted*, 2:26-cv-00104-SHD (D. Ariz. Mar. 17, 2026) (finding that the entry fiction doctrine does not preclude an as-applied challenge to length of detention) *and Kaur v. Lyons*, 2:26-cv-00217-PHX-KML (ASB), at *5–7 (D. Ariz. Mar. 24, 2026) (pending R&R finding that the entry fiction doctrine does not preclude an as-applied challenge to length of detention).

For example, the district court in *D.V.D v. U.S. Dep't of Homeland Sec.* recently illustrated why the entry fiction doctrine does not foreclose Petitioner's as-applied challenge to the length of her detention. In *D.V.D.*, the court noted that the, although the entry fiction doctrine "provide[d] an exception to the otherwise geographic scope of the Due Process Clause," the doctrine only impacted those due process rights "regarding admission." *D.V.D.*, 2026 WL 521557, at *30 (cleaned up) (quoting *Thuraissigiam*, 591 U.S. at 140).  The court proceeded to "distinguish rights regarding admission," which relates to the government's "sovereign authority to admit noncitizens only in cases as it may see fit," with other interests that might be implicated by the Due Process Clause. *D.V.D.*, 2026 WL 521557, at *30 (cleaned up). Because the *D.V.D.* petitioners neither challenged their orders of removal nor the process resulting in those orders, the government's sovereign prerogative was not implicated. *Id.* at *30–31 (citing *Johnson v. Guzman Chavez*, 594 U.S. 523, 536 (2021)). Hence, the entry fiction doctrine did not bar the petitioners' non-admissions due process challenges. *Id.* at *31.

In a similar—albeit abbreviated—fashion, the court in *Padilla* refuted the government's entry fiction argument. There, the court rejected the government's claim that the entry fiction doctrine broadly applied to any due process challenge, noting that such an assertion "is untethered to the claim in *Thuraissigiam* and the [Supreme] Court's reasoning." *Padilla*, 704 F. Supp. 3d at 1171. Rather, the entry fiction doctrine is constrained "only [to] those rights regarding admission that Congress has provided by statute." *Id.* at 1172 (emphasis omitted) (quoting *Thuraissigiam*, 591 U.S. at 140). Hence, where a petitioner "do[es] not challenge the admission process in any way or assert a right to remain in the United States," the entry fiction doctrine does not apply. *Padilla*, 704 F. Supp. 3d at 1172.

To state the matter bluntly, a bond hearing—which may result in release—does not equate admissions. *See Rincon v. Hyde*, 810 F. Supp. 3d 101, 107 (D. Mass. 2025) (noting that, if a petitioner were released following a bond hearing, they "will be subject to the same removal proceedings as before, with no new right to remain"). "Thus, Petitioner does

not purport to invoke any 'rights regarding admission.'"[13, 14] *Id.* at 110 (quoting *Thuraissigiam*, 591 U.S. at 140); *D.V.D.*, 2026 WL 521557, at *30 ("It makes sense to distinguish between rights regarding admission and other interests that might be protected by the Due Process Clause.").

Neither *Padilla* nor *D.V.D.* challenge "more than a century of Supreme Court case law confirm[ing] that the proper application of an entry fiction, where otherwise appropriate, is to preserve the Government's authority over the determination of a noncitizen's *admissibility*." *D.V.D.*, 2026 WL 521557, at *30; *Padilla*, 704 F. Supp. 3d at 1171–72. Rather, the decisions, based on a textual analysis of *Thuraissigiam* and other Supreme Court precedent, found that where a party "challenge[s] neither their orders of removal nor any of the processes that produced those orders, their claims do not implicate, nor even relate to, the issue of their admissibility." *D.V.D.*, 2026 WL 521557, at *31; *Padilla*, 704 F. Supp. 3d at 1172 (finding that the class of plaintiffs were not challenging the admissions process nor their right to stay in the country, meaning that the entry fiction doctrine did not bar their due process claim).

This persuasive statutory interpretation, paired with "the Ninth Circuit's articulation of 'grave doubts' about the constitutionality of 'any statute that allows for arbitrary

---

[13]     *Cf. Counselman v. Hitchcock*, 142 U.S. 547, 565 (1892) ("Legislation cannot detract from the privilege afforded by the Constitution. It would be quite another thing if the Constitution had provided that no person shall be compelled in any criminal case to be a witness against himself, unless it should be provided by statute that criminating evidence extracted from a witness against his will should not be used against him. But a mere act of Congress cannot amend the Constitution, even if it should engraft thereon such a proviso."), *overruled on other grounds*, *Kastigar v. United States*, 406 U.S. 441 (1972).

[14]     Respondents' reliance upon the Supreme Court's *Thuraissigiam* and *Mezei* decisions to rebut this conclusion are unavailing. First, the Court in *Thuraissigiam* did not announce that all of a noncitizens' rights were limited to those Congress provided by statute. Rather, the Supreme Court's holding was a limited to "those rights *regarding admission* that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. Furthermore, the noncitizen in question in *Mezei* was determined to "be prejudicial to the public interest for security reasons." *Mezei*, 345 U.S. at 208, 216 ("An exclusion proceeding grounded on danger to the national security, however, presents different considerations; neither the rationale nor the statutory authority [provide] for such release exists."). Respondents do not contend that Petitioner is a national security risk. Additionally, as noted in *Ramirez*, "the statutory scheme underpinning" *Mezei* is "no longer in effect," so it is of limited import in the context of § 1225(b)(1)(B)(ii) noncitizens. *Ramirez*, 2019 WL 11005487, at *5. Hence, *Mezei* is not directly applicable to the situation at hand.

prolonged detention without any process,'" leaves undersigned in agreement with "the other courts that have found that arriving aliens detained pursuant to Section 1225(b)(1)(B)(ii) have" additional procedural constitutional protections[15] "once it is determined that the duration of their detention has become unreasonable." *Ramirez v. Sessions*, No. 18-CV-05188-SVK, 2019 WL 11005487, at \*6 (N.D. Cal. Jan. 30, 2019) (quoting *Rodriguez v. Marin*, 909 F.3d 252, 256–57 (9th Cir. 2018) ("Arbitrary civil detention is not a feature of our American government. 'Liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'") (cleaned up) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987))).

Most importantly, the Court finds that this holding comports with the Supreme Court's extensive catalog of immigration decisions. The Supreme Court has noted that in American society, "liberty is the norm," which necessitates that civil detention "is the carefully limited exception." *Foucha*, 504 U.S. at 83 (quoting *Salerno*, 481 U.S. at 755); *cf. Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) ("The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review") (citing *Boumediene v. Bush*, 553 U.S. 723, 781–83, 786 (2008)). This contention is no less valid when considering that Petitioner is not a citizen, *see Yick Wo v. Hopkins*, 118 U.S. 356, 368–69 (1886), because "[t]he Fifth Amendment, as well as the Fourteenth Amendment, protects every one of" the "millions of aliens within the jurisdiction of the United States." *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.") (citing *The Japanese Immigration Case*, 189 U.S. 86, 100–01 (1903)); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("[I]t must be concluded that all persons within the territory of the United States are entitled to the protection guaranteed by th[e Fifth and Sixth Amendments], and that even aliens shall not be . . . be deprived of life, liberty, or property without due process of law.").

---

[15]     *See infra* section V.B.2.a.

- 14 -

"The constitutional sufficiency of [due process] procedures provided in any situation, of course, varies with the circumstances." *Landon*, 459 U.S. at 33–34. Here, it appears that affording Petitioner constitutional due process protections not related to admissions is congruent with binding precedent.[16] In short, the Court finds that the "preservation of petitioner's right to due process does not leave an unprotected spot in the Nation's armor." *Kwong Hai Chew v. Colding*, 344 U.S. 590, 602 (1953). Therefore, the Court declines to follow Respondents' characterization of the entry fiction doctrine.

### 2. Due Process Rights Regarding Petitioner's Prolonged Detention.

"Once it is determined that due process applies, the question remains what process is due." *Morrissey*, 408 U.S. at 481. To determine what process is due, the Court will first determine what procedural due process rights a noncitizen held under § 1225(b)(1)(B)(ii) is entitled to. Then, the Court will analyze whether Petitioner is entitled to additional due process at this juncture.

a. Application of the Due Process Clause to Noncitizens Held Pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii).

The Court first turns to what process a noncitizen held pursuant to § 1225(b)(1)(B)(ii) is entitled to. The Court notes that this matter is rather opaque in light of the Supreme Court's decision in *Jennings*. In *Jennings*, the Court determined that nothing in the statute required *periodic* bond hearings for a class of noncitizens including those held under § 1225(b)(1). *See Jennings*, 583 U.S. at 312. However, the Supreme Court did not address situations where a § 1225(b)(1) noncitizen had not received a bond hearing and whether that failure constituted a constitutional violation. *See id.* at 312–14. Instead, the Supreme Court left it for the Ninth Circuit Court of Appeals to decide. *Id.* The Court of Appeals, in turn, left it for the individual district courts to decide. *See Rodriguez*, 909 F.3d at 255–56.

---

[16] Of course, this finding "does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship." *Id.* at 78. The Constitution clearly provides Congress a "broad power over naturalization and immigration," including the power to "make[] rules that would be unacceptable if applied to citizens." *Id.* at 80–81. The instant findings do not subvert these notions.

In the interim, there has been guidance from our sister districts on what process a noncitizen held pursuant to § 1225(b)(1)(B)(ii) has. For example, in *Ramirez v. Sessions*, the District Court for the Northern District of California found that a an "arriving [noncitizen] detained pursuant to Section 1225(b)(1)(B)(ii) ha[s] a due process right to an individual bond hearing once [the court] determine[s] that the duration of their detention has become unreasonable." *Ramirez*, 2019 WL 11005487, at *6. More recently, the District Court for the Eastern District of California in *Doe v. Andrews* likewise found that a petitioner who has been held for a prolonged period under § 1225(b)(1)(B)(ii) has a due process right in an initial[17] bond hearing. *See Doe v. Andrews*, 1:25-cv-00333-JLT-HBK, at *11–12, 18–19 (E.D. Cal. Mar. 23, 2026). The *Andrews* court specifically noted that:

> in *Jennings*, the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b), 1226(a), and 1226(c) include an implicit 6-month time limit on the length of mandatory detention and reversed Rodriguez III, holding that these statutes do not provide a right to periodic bond hearings every six months. *Jennings*, 583 U.S. at 301, 304, 306; *see also Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060, 1065 (9th Cir. 2015) (involving a class action where noncitizens challenged their prolonged detention under §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention).
>
> Notably, however, the Supreme Court in *Jennings* "chose to answer only the question whether the statutory text itself included a limit on prolonged detention or a requirement of individual bond hearings. . . . [T]he Court concluded that as a matter of statutory construction, the only exceptions to indefinite detention were those expressly set forth in the statutes or related regulations. *See* 8 U.S.C. § 1182(d)(5)(A) (humanitarian parole); 8 U.S.C. § 1226(a)(2)(A) (bond); 8 U.S.C. § 1226(c)(2) (witness protection); 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1) (bond hearing)." [*Rodriguez*, 909 F.3d at 255]; *see Jennings*, 583 U.S. at 288–289, 301, 304–306. Instead, the Supreme Court remanded the constitutional issues to the Ninth Circuit. *Jennings*, 583 U.S. at 312 ("Because the Court of Appeals erroneously concluded that periodic bond hearings are required under the

_____

[17] It is important to distinguish the situation here, where Petitioner has not received a bond hearing, from situations where § 1225(b)(1)(B)(ii) noncitizen detainees have received a prior bond hearing. For example, in *Singh v. Nielsen*, the Court held that a petitioner who already received an initial bond hearing does not have a right to renewed bond hearing. *Singh v. Nielsen*, No. 18-CV-02490-LB, 2018 WL 4110549, at *3–4 (N.D. Cal. Aug. 29, 2018).

immigration provisions at issue here, it had no occasion to consider respondents' constitutional arguments . . . . [W]e do not reach those arguments. Instead, we remand the case to the Court of Appeals to consider them in the first instance."). In turn, the Ninth Circuit remanded the case to the district court to consider the constitutional arguments in the first instance, noting it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez*, 909 F.3d at 255–256.

Therefore, the Supreme Court did not foreclose the ability to raise as-applied challenges to prolonged detention under these statutes. *Rodriguez*, 909 F.3d at 255–256; *Jennings*, 583 U.S. at 312. Then, in *Nielsen*, the Supreme Court expressly noted that as-applied challenges to detention under § 1226(c) are not foreclosed. *Nielsen v. Preap*, 586 U.S. 392, 420 (2019). This suggests that those detained under § 1225(b)(1) have due process rights beyond those authorized by statute, contrary to Respondents' assertions.

*Andrews*, 1:25-cv-00333-JLT-HBK, at *10–11. Following this reasoning, the court found that the petitioner had a due process right to an individualized bond hearing. *Id.* at 13–14, 17–18.

The foregoing conclusions are not isolated decisions. Rather, district courts throughout the country have applied similar reasoning in other cases related to noncitizens held pursuant to § 1225(b)(1)(B)(ii). *See L.S. v. Warden, Otay Mesa Det. Ctr.*, No. 25cv3598-LL-BJW, 2026 U.S. Dist. LEXIS 10299, at *8–9 (S.D. Cal. Jan. 20, 2026) ("The Court agrees with those courts that have found a noncitizen detained under § 1225(b) for a prolonged period without an individualized bond hearing may assert a constitutional right to due process.") (citation omitted); *see also Ogeto v. LaRose*, No. 26-cv-388-RSH-MSB, 2026 U.S. Dist. LEXIS 28730, at *6 (S.D. Cal. Feb. 11, 2026) ("This Court agrees with the majority position that a person detained under Section 1225(b) may assert a due process challenge to prolonged mandatory detention without a bond hearing."); *Campos v. Larose*, No. 26-cv-29-RSH-JLB, 2026 U.S. Dist. LEXIS 10238, at *6–7 (S.D. Cal. Jan. 20, 2026) (same); *Galkin v. Scott*, No. 2:26-cv-00530-TLF, 2026 U.S. Dist. LEXIS 46838, at *6 (W.D. Wash. Mar. 6, 2026) ("Unreasonably prolonged detention under § 1225(b) without

a bond hearing violates due process.") (quoting *Banda*, 385 F. Supp. 3d at 1117); *Leonteva v. Noem*, No. 4:26-cv-00043-SEB-KMB, 2026 U.S. Dist. LEXIS 52217, at *12–13 (S.D. Ind. Mar. 13, 2026) ("The majority of courts who have considered this issue have determined that the due process protections recognized in *Zadvydas* prohibit indefinite detention under § 1225(b)(1)(B)(ii) as violative of due process requirements."); *K-S v. FCI-Berlin*, No. 25-cv-288-SE, 2025 U.S. Dist. LEXIS 260379, at *2 (D. N.H. Dec. 17, 2025) (noting that prolonged detention absent a bond hearing "offends due process as applied in the specific circumstances of this case"); *Rashid v. Trump*, 807 F. Supp. 3d 349, 365 (D. Vt. 2025) ("Most judges who have squarely faced the question have applied the same logic to § 1225(b), holding that arriving [noncitizens] . . . cannot be detained for an unreasonably prolonged period of time without a bond hearing."); *Choudhary v. Chestnut*, No. 1:26-cv-01770-DJC-CKD, 2026 U.S. Dist. LEXIS 62691, at *1–2 (E.D. Cal. Mar. 24, 2026) (regarding a noncitizen held pursuant to § 1225(b)(1)(B)(ii), "[t]his Court has previously joined other districts in concluding that the unreasonably prolonged detention of individuals such as Petitioner under section 1225(b) without a bond hearing can violate the Due Process Clause"). *But see Padilla v. Galovich*, No. 25-cv-865-jdp, 2025 U.S. Dist. LEXIS 260946, at *8 (W.D. Wis. Dec. 15, 2025) (asserting that a § 1225(b)(1)(B)(ii) noncitizen's prior bond hearing was "the result of what is now recognized as an erroneous interpretation of § 1225(b)(1)(B)(ii)"); *De La Cruz Bejarano v. Robbins*, No. 1:25-CV-01537 WBS CKD, 2025 WL 3187623, at *2 (E.D. Cal. Nov. 14, 2025) ("[B]ecause 8 U.S.C. § 1225(b)(1)(B)(ii) does not say anything whatsoever about bond hearings, petitioner is not entitled to one.") (cleaned up).

The Court finds the analysis presented in the majority persuasive and accordingly recommends the Presiding Judge adopt their reasoning.

  b. <u>Application of the Due Process Clause in the Instant Action.</u>

Courts in this circuit and beyond have grappled over what test should be used to determine whether procedural due process requires a bond hearing for a noncitizen held pursuant to § 1225(b)(1)(B)(ii). *See Andrews*, 1:25-cv-00333-JLT-HBK, at *15–17

(applying the 3-factor *Lopez* test established in *Lopez v. Garland*, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022)); *see also Galkin*, 2026 U.S. Dist. LEXIS 46838, at *7 (applying the 6-part *Banda* test) (citing *Banda*, 385 F. Supp. 3d at 1118); *Leonteva*, 2026 U.S. Dist. LEXIS 52217, at *22 (applying the same 6-factor test, but calling it the *Jamal A* test) (*citing Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)); *L.S.*, 2026 U.S. Dist. LEXIS 10299, at *11–15 (applying the 3-part *Mathews v. Eldridge* test) (citing *Mathews*, 424 U.S. at 335).

Out of the abovementioned tests, the Court finds the *Banda* test the most applicable to the situation at hand. Under the *Banda* test, the Court considers the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Banda*, 385 F. Supp. 3d at 1118.

The Court finds the *Banda* test more suitable than the *Mathews*[18] and *Lopez*[19] tests. Beginning with *Mathews*, the Court concurs with other district courts that have found that "while the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly dispositive of whether prolonged mandatory detention has become unreasonable in a particular case." *Lopez*, 631 F. Supp. 3d at 879. Put differently, the *Mathews* test is apt where the question is whether an administrative procedure provided is "constitutional sufficient," but "[i]t does not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be

---

[18] Under the *Mathews* test, the Court considers:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
*Mathews*, 424 U.S. at 335.
[19] Under the *Lopez* test, "the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." *Lopez*, 631 F. Supp. 3d at 879.

provided." *Banda*, 385 F. Supp. 3d at 1106–07. Therefore, the Court does not recommend the Presiding Judge apply the *Mathews* test to the instant action.[20, 21]

Turning next to the *Lopez* test, undersigned notes that this test "concern[s] due process challenge[s] to mandatory detention under § 1226(c), [and] are, in essence, a truncated version of the factors enumerated in *Banda*, which concerned mandatory detention under § 1225(b)(1)." *Andrews*, 1:25-cv-00333-JLT-HBK, at *14. Because the six-factor *Banda* test is more detailed than *Lopez* and is designed for noncitizens held pursuant to § 1225(b)(1), the Court accordingly elects to apply it.

> i.      *Length of Detention*.

The first *Banda* factor is the length of detention, "which is the most important factor." *Banda*, 385 F. Supp. 3d at 1118. "It is important to bear in mind the context: The detention that is being examined here is the detention of a human being who has never been

---

[20]      This is not the first instance that courts within the District of Arizona have applied the *Banda* test. *See Avakian*, 2:26-cv-00104-SHD (CDB), at *21–25; *see also Kaur*, 2:26-cv-00217-PHX-KML (ASB), at *8–11.

[21]      In any event, the outcome applying *Mathews* and *Banda* would be the same—*i.e.*, Petitioner would be entitled to an individual bond hearing. Applying the first *Mathews* element, undersigned finds that Petitioner has a strong private interest in her liberty from prolonged civil detention. *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) ("As to the first factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'") (quoting *Foucha*, 504 U.S. at 80).

Turning to the second element, considering the prolonged nature of Petitioner's detention, the Court finds a large risk of erroneous deprivation in the absence of an individualized bond hearing. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (noting that the discretionary parole system envisioned under the Immigration and Naturalization Act is insufficient "to overcome the constitutional concerns raised by prolonged mandatory detention"). Hence, an individualized bond hearing would greatly mitigate the risk of a continued constitutional violation.

Finally, regarding the third *Mathews* factor, the government interest in detaining Petitioner without an individualized bond hearing is low. First, "[p]roviding petitioner with a bond hearing would not impede respondents' interest in effecting removal or protecting the public, as the purpose of the bond hearing is to determine whether petitioner is a danger or flight risk." *Jensen v. Garland*, No. 521CV01195CASAFM, 2023 WL 3246522, at *6 (C.D. Cal. May 3, 2023). Second, the fiscal burden of providing an individualized bond hearing is low. *See Abduraimov v. Andrews*, No. 1:25-CV-00843-EPG-HC, 2025 WL 2912307, at *7 (E.D. Cal. Oct. 14, 2025) ("Courts generally have found that the cost of providing a bond hearing is relatively minimal, and there is nothing in the record before this Court demonstrating that providing Petitioner with a bond hearing would be fiscally or administratively burdensome."). Therefore, the third factor minimally favors the government. Accordingly, applying the *Mathews* test to Petitioner's 17 month detention, undersigned concludes that due process requires she be provided with an individualized bond hearing.

found to pose a danger to the community or to be likely to flee if released." *Id.* (quoting *Jamal A.*, 358 F. Supp. 3d at 859).

Petitioner has been held in DHS custody for approximately 17 months. District courts have found that detention for eight, 15, 17, 20, and 21 months under § 1225(b)(1) without an individualized bond hearing unreasonably prolonged. *See Yagoub v. LaRose*, No. 26-CV-914 JLS (JLB), 2026 WL 673799, at *2 (S.D. Cal. Mar. 10, 2026) (noting eight months is prolonged); *see also Saribekyan v. Chestnut*, No. 1:26-CV-01696-DJC-DMC, 2026 WL 776031, at *2 (E.D. Cal. Mar. 19, 2026) (noting 15 months was prolonged); *Banda*, 385 F. Supp. 3d at 1118 ("Petitioner has been in detention for approximately 17 months, which is a very long time."); *Chekhovskii v. Scott*, No. 2:25-CV-02550-TLF, 2026 WL 353265, at *4 (W.D. Wash. Feb. 9, 2026) (finding, based on a detention of 20 months, that the first *Banda* factor favored the petitioner); *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *7 (finding, based on a detention of 21 months, that the first *Banda* factor favored the petitioner). In light of these decisions, and based upon the facts of the instant action, the Court finds the length of Petitioner's detention strongly favors granting her a bond hearing.

ii.      *Likely Duration of Future Detention*.

The second factor requires the Court to "consider[] how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings—including administrative and judicial appeals." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Bobokulov Akmal v. Warden of Cal. City Det.*, No. 1:25-CV-01921-DC-DMC-HC, 2026 WL 657606, at *7 (E.D. Cal. Mar. 9, 2026) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 211 (3d Cir. 2020)).

While undersigned is unable to predict the future, considering Petitioner's pending appeal before the Ninth Circuit Court of Appeals, the Court finds that the likely duration of future detention is sufficiently lengthy for this factor to favor Petitioner. *See Chekhovskii*, 2026 WL 353265, at *4 (finding the second *Banda* factor favored a petitioner

who filed an appeal before the Ninth Circuit Court of Appeals because, "based on the current record, it appears likely [that the] petitioner [would] face many more months and potentially years in detention"); *see also Bobokulov Akmal*, 2026 WL 657606, at *7 (same).

              *iii.*     *Conditions of Detention.*

The third factor requires the Court to consider the conditions of confinement. *Banda*, 385 F. Supp. 3d at 1119. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Because neither party has submitted any evidence regarding the conditions of Petitioner's confinement, the Court concludes that this factor is neutral.

              *iv.*     *Delays in Removal Proceedings Caused be Petitioner.*

The Fourth factor requires the Court to consider the nature and extent of any delays caused by Petitioner. "Courts should be sensitive to the possibility that dilatory tactics by the removable noncitizen may serve not only to put off the final day of deportation, but also to compel a determination that the noncitizen must be released because of the length of his incarceration." *Banda*, 385 F. Supp. 3d at 1119 (cleaned up). Relating potential delay by Petitioner, Respondents contend that, because Petitioner has delayed her own "removal due to [her] own litigation strategy, [s]he may not take advantage of the Due Process Clause to secure [her] release." (Doc. 22 at 4.) The Court is unpersuaded.

While it is true that Petitioner has caused a delay in her removal by seeking judicial review by the Ninth Circuit Court of appeals, the Court does not find that this was a dilatory tactic aimed at extending her detention so she could then seek release. And in any event, based on a review of our sister districts' caselaw, the Court is persuaded that a petitioner, "should not be effectively punished through indefinite detention for exercising her right to appeal her removal order." *Yuehui Chen v. Noem*, No. 5:26-CV-00397-SSS-DTB, 2026 WL 425694, at *6 (C.D. Cal. Feb. 13, 2026); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 964 (N.D. Cal. 2019) ("But the government's suggestion that Petitioner's choice to appeal adverse rulings weighs against any constitutional claim that he may make regarding

his detention during the course of the appeal is untenable, and the Court will not require that a petitioner who pursues his available legal remedies must forego any challenge to the reasonableness of his detention in the interim.") (cleaned up); *Barraza v. ICE Field Off. Dir.*, No. C23-1271-BHS-MLP, 2023 WL 9600946, at *6 (W.D. Wash. Dec. 8, 2023), *report and recommendation adopted sub nom. Barraza v. U.S. Immigr. & Customs Enf't Field Off. Dir.*, No. C23-1271 BHS, 2024 WL 518945 (W.D. Wash. Feb. 9, 2024) ("Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable.") (citing *Liban M.J. v. Sec. of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019)); *Henriquez v. Garland*, No. 5:22-CV-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (finding that delays caused by the petitioner to "develop affirmative relief in the face of his removability . . . . does not deprive him of a constitutional right to due process," especially because "the proceedings have been significantly prolonged for reasons beyond his control."). Hence, the fourth factor minimally favors Respondents.

v.    *Delays in Removal Proceedings Cased by Government*.

The Court next considers the delays in removal caused by the government. *Banda*, 385 F. Supp. 3d at 1120. While Respondents contend that Petitioner was the sole cause of the delays in this action, *see* (Doc. 22 at 4), this contention belays the fact that Respondents themselves have caused delay in the instant action. Although there is no evidence in the docket that Respondents intentionally caused any delay, the "delay in this case is a product of the . . . Ninth Circuit's crowded dockets, which courts typically attribute to the Government—not the Petitioner." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *11 (quoting *Firas Djelassi v. Ice Field Off. Dir.*, 434 F. Supp. 3d 917, 923 (W.D. Wash. 2020)). Therefore, the fifth factor slightly favors Petitioner.

vi.    *Likelihood of Removal*.

The final *Banda* factor requires the Court to consider "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (citation omitted). "[W]here a noncitizen has asserted a good faith challenge to removal,

'the categorical nature of the detention will become increasingly unreasonable.'" *Id.* (quoting *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018)). Based on the current record, "the Court lacks sufficient information to comment on the potential merits of [P]etitioner's pending appeal." *Galkin*, 2026 U.S. Dist. LEXIS 46838, at *12. Therefore, the sixth factor is neutral.

> ### vii.    Conclusion.

Considering three of the *Banda* factors favor Petitioner, one factor slightly favors Respondents, and two factors are neutral, the Court concludes that Petitioner's continued detention under § 1225(b)(1)(B)(ii) has become unreasonable. Therefore, Petitioner is entitled to a bond hearing.

The Court notes that, in her Petition, Petitioner did not request a bond hearing. Rather, Petitioner requested relief is release from DHS detention. *See* (doc. 4 at 16.) The Court does not find that Petitioner's failure to request a bond hearing is fatal to her Petition for three reasons. First, the Court notes that a bond hearing for a noncitizen held under § 1225(b)(1) is required for said noncitizen to be released on parole. Therefore, a bond hearing is, in effect, a prerequisite to Petitioner's requested relief. Second, a bond hearing reasonably fits within Petitioner's request for "any further relief [the court] deems just and proper." (Doc. 4 at 16.) Third, the Court notes "that a federal court should not dismiss a meritorious constitutional claim because the complaint seeks one remedy rather than another plainly appropriate one." *Holt Civic Club v. Tuscaloosa*, 439 U.S. 60, 65–66 (1978) ("Under the Federal Rules of Civil Procedure 'every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings[.]' Thus, although the prayer for relief may be looked to for illumination when there is doubt as to the substantive theory under which a plaintiff is proceeding, its omissions are not in and of themselves a barrier to redress of a meritorious claim.") (quoting Fed. R. Civ. P. 54(c)).

Therefore, the Court recommends Petitioner be provided with an individualized bond hearing.

**C. Remedy**.

Where a noncitizen's detention under § 1225(b)(1)(B)(ii) has become unreasonable, the proper remedy is an individualized bond hearing before a neutral IJ. *See L.S.*, 2026 U.S. Dist. LEXIS 10299, at *15; *see also Banda*, 385 F. Supp. 3d at 1120. At the bond hearing, Respondents bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203–05 (9th Cir. 2011).

Accordingly,

**IT IS RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus (doc. 4) be **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER RECOMMENDED** that Petitioner's request for immediate release be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Petitioner be provided an individualized bond hearing within **SEVEN (7) DAYS** if this Report and Recommendation is adopted. This bond hearing shall comply with the procedural requirements set out in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). The government shall bear the burden of proving that Petitioner is a danger or flight risk by clear and convincing evidence.

**IT IS FURTHER RECOMMENDED** that Petitioner **SHALL** be provided with adequate notice prior to the hearing and **SHALL** be permitted to have counsel present.

**IT IS FURTHER RECOMMENDED** that the parties shall file a joint status report with the Court regarding the bond hearing and whether the Petitioner was released within **FOURTEEN (14) DAYS** if this Report and Recommendation is adopted.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. The Parties shall have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 6, 72. Thereafter, the Parties have 14 days within which to file a response to the objections.

Failure to file timely objections to the Magistrate Judge's Report and

Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 2nd day of April, 2026.

Honorable John Z. Boyle
United States Magistrate Judge